Do you want to reserve any time for it, Roberto? No, I'll reserve four minutes of my time. You should keep track of it. I'll try to help. Thank you. Although I think we have 15 minutes this morning. Yes, 15. Thank you. Although my comments are not all that extensive. May it please the Court, I'm Joshua Furman. I do represent the appellant in both of the cases that are combined for our argument today. This case really presents, both of the cases really present one simple, straightforward question that's been a matter of black letter law in the United States for some time. And that's when a plaintiff desires to engage in expressive activity, and that expressive activity is subject to a permitting scheme that the government agency has discretion to grant or deny a permit. Must you apply for the permit first? The answer to that question has been no for decades. Well, we're talking about two different ordinances here. And the first question is, do you have standing to challenge the second ordinance without having applied for a business license? Well, let's talk about what the second ordinance – when you say the second ordinance, we're talking about the business licensing ordinance. Is that right? No, that's the first one. Okay. Business licensing ordinance. Do you – you don't have a business license? Did not apply for a business license and did not have an application pending at the time the complaint was filed. Right. Now, what do you – what is your attack on the business license? Well, I'd first point out that it comes to this Court in sort of an odd procedural posture. The business license issue was not actually taken up by the Court below until the reply brief on the motion to dismiss. We didn't have a chance to address it. It's addressed in your brief, isn't it, to this Court? It is addressed in the brief. That's right, because it was the express basis for the trial court's ruling. The trial court said, look, you don't have a business license. If you don't have a business license, that means you can't make money. So you can't have standing to challenge the sign permit. And, you know, the way it's addressed in the opponent's brief, I think, fleshes that out as a very circular way of looking at it. Well, you can't get a – you can't challenge the sign permit because you don't have a business license. Well, you can't get a business license because the thing that you'd like to do is display a sign for which you cannot get a sign permit, therefore you cannot get a business license. So to the extent that it's being used as a circular way of getting rid of standing, I think that's legitimate. You don't know the answer to that. You argue that this is sort of a catch-22, but you don't know. Have you ever applied? Has your client ever applied to either of these clients? No. Or a business license? Has not applied for a business license. So you anticipate that the city of Reno would deny your license? Well, if we're going to address the business license straight on. I thought that was the question my colleague asked you. Yes. And the first thing I pointed out is that there is an issue in the case below because the business license did not come up until reply brief. That's why it's not challenged in the complaint below. You're talking about the district court now. That's right. Yes, the reply brief on the motion. The business license thing is front and center in your brief. Yes. The city of Reno responded to it, and you have an opportunity to have a second bite, if you will, in your reply brief. So that issue is fully in front of us. Yes. Okay. However, when it was not – when we were not allowed to amend the complaint below. Did you ask? Yes. That was part of the briefing below, is my understanding. When did you ask? Was it before or after the judge ruled? I'm not sure, Your Honor. Does it make a difference? Well, the judge has discretion to allow amendment after the ruling anyhow. That's not the question. I'm sorry? That's not the question. The question is, does it matter? I don't think it does because in this context the – Okay, so we're now headlong on the business license issue. Okay. You don't know if the city of Reno would turn you down because you have never applied. Don't have to apply. Your contention is you don't have to. Don't have to apply under the same – You could go out, you could open up a brothel in downtown Reno and not apply for a business license. No. What we're saying, Your Honor, is that you don't have to apply in order to challenge it. The issue is not is there a business license that has to be had. But you have no idea whether the city of Reno would grant you a business license or not. But the city of Reno's business licensing ordinance has the same defects in terms of unbridled discretion that the sign code had. In fact, it has even worse defects in that range, in that area. If you look at the code, the code section that tells you how you can – the basis for the business permit office's denial of a permit, it specifically talks about the fact that in order to get a business license, you have to comply with every single part of the business license procedure. And that's at section 404.150, subsection 2 of the Reno Municipal Code. When you go to the approval process section, which is 4.04.070, the code says, all applications for licenses shall be referred to the appropriate city departments for review and investigation. These departments shall either recommend approval or denial of the application and forward the recommendation to the city license office. The city license office shall review the recommendations of all the applicable departments and decide whether to approve or deny the license. Where's the standard? The question is can you make a facial challenge to the business license ordinance? Absolutely. And why? Because a facial challenge to the business license ordinance, as applied in this case, brings up expressive activity, which you can always challenge without ever applying for the permit. We argue futility in the brief. I don't think you even have to get there. The question is can you launch a facial challenge because this ordinance is restricting expressive activity. The answer has long been yes. You're saying that any ordinance, no matter how general, can be challenged facially if the activity you want to engage in is expressive? Not only that, but when it's specifically raised by the party who has to give you the license as a basis for denying the license, specifically for expressive activity. There is no basis for denying the license on this record, correct? I missed the last part of your question, Your Honor. I apologize. There is no basis for the denial of a business license on this record because your client never applied. There's no basis for the grant or denial. What the record shows is that we've got an ordinance that's subject to facial challenge. And given the opportunity, we'd like to do that. Let's assume you're right on the First Amendment challenge to the sign ordinance, but you don't have a business license. What relief can you get? I mean, can you just go out and start putting up signs you don't have to have a business license? If the business license is going to be used as a tool to suppress expressive activity, then the answer is yes. How do you know that? Because let's look at How do you know that? Because in order to get a sign permit, they're saying in order to get a sign permit, you have to have a business license. They're saying in order to get a business license, you have to have a sign permit. The two are inextricably linked, the way they're being presented here. Well, didn't in the Richmond case, didn't they apply for the license before they challenged the ordinance itself, the sign ordinance? Herson v. City of Richmond? Yes. There were licenses applied for. So I guess the point I think everybody's trying to make is how do you know what happens if you don't actually apply in order to get yourself in a position to have standing? I appreciate the logical point, but I don't think it's relevant to the inquiry. You don't have to What case says that you don't have to apply for a business license? It's been absolutely clear. For a business license? Yeah. Well, I would apply the same reasoning that the Supreme Court applied in Friedman v. Maryland. What kind of an ordinance was it there? In that case, you're talking about a, I believe that's a I don't recall which kind of ordinance it was. I think it was either a newspaper or a There was an ordinance directed at First Amendment activity. Yes, it was. Absolutely. But that's what I'm saying. What kind of, what case says that if it's a neutral ordinance, not directed at First Activity, First Amendment activity, but at all activities, that you don't have to apply for it if you want to engage in First Amendment activity? I don't see how Friedman doesn't say that. Well, you know, I understand that there are cases that say if there are ordinances that regulate, specifically regulate First Amendment activity, that that's in a special category. You don't have to apply for that. But I'm trying to find out, is there any case that says that you don't have to apply for a license or for permission or anything that is of general applicability for anyone engaging in any business, as you are, you want to engage in a First Amendment business? I think whenever you have an ordinance that's of general applicability, when the ordinance has to be, presents a hoop that has to be passed through, which is actually a little bit unique in the state of Nevada, but when that is presented, then, and you have to get through that hoop in order to get to the expressive activity, then it falls within the bailiwick of Friedman and the cases that follow. It says that if you have to do this in order to get expressive activity, and if the thing that you have to do in order to get expressive activity, regardless of how the text. Now that's just the case that you're talking about. What kind of an ordinance was challenged there? Was that an ordinance of general applicability to all types of businesses, or was it an ordinance that regulated First Amendment activity? Generally speaking, they're First Amendment cases. Yeah. Friedman's a First Amendment case. You're talking about ordinances that are directed at First Amendment activity, and the business license is not one directed at First Amendment activity. Now, you may have an argument that doesn't matter, that any ordinance that directly, indirectly affects all activity, that if your challenge is based on First Amendment activity, but I'm trying to find out whether that's a new theory that you're advancing, or whether there's any support for that in the law. I don't think it's a stretch, Your Honor, at any, particularly in the read. It may not be a stretch, but I'm trying to see if there's a case that supports your theory. I don't think we have a case cited in the briefs, Your Honor. I don't have another case to present to you about general applicability, except to the extent we're talking about things like marches, things that have health, safety, and welfare. Those are marches which require a parade permit. Yes. Which is a First Amendment activity. Yes. Well, let's save you the last two minutes, because we can ask your opponent the opposite of the question. All right. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Jonathan Shipman, Assistant City Attorney on behalf of the City of Reno. Let me just start where we left off with your opponent. I'm sorry? Let me start where we left off with your opponent. Yes. He tells us that there are cases where the ordinance is directed at First Amendment activities, such as a parade ordinance, and that there you can challenge it facially. All right. He said he does not have a case that says that merely because you want to engage in a First Amendment activity, you can challenge on its face an ordinance of general applicability, such as a business license. Now, putting it the other way, do you have a case that says that even though you want to engage in First Amendment activity, you can't challenge facially an ordinance that's neutral as to — that applies to all businesses? Yes, Your Honor. I have several cases. I can cite you. The first case, the Supreme Court case, Acara v. Cloud Books, Inc. That's 478 U.S. 697. This Ninth Circuit's talk of the town versus Department of Financial and Business Services, 2003, U.S. Appalachia, 25890. It was decided in 2003. Nunez by Nunez versus City of San Diego. The concept that I think the Court is getting to and the question is being asked is whether you can challenge an ordinance of general applicability. And what the Supreme Court has said and what this Circuit Court has said is that before you can do that, before you can challenge on a First Amendment ground an ordinance of general applicability, you have to make a determination that the government either, number one, is regulating conduct with an expressive component, so it's aimed at that, or, two, the ordinance or the regulation is imposing a disproportionate burden on those engaged in expressive conduct. And on behalf of the city, I would submit that the business licensing ordinance and regulation is neither of those. It's not directed at commercial speech or any particular type of speech. It's there primarily to raise revenue. And it doesn't pose any additional burden on the First Amendment speech, unlike, you know, in petitioners, in the appellant's brief, they cite FWPBS, Inc. v. Dallas. And, again, that case was a case of, you know, that was a regulation of sexually oriented business, and it was a much higher, it was not just a general business license, but every year the business had to go through an inspection because it was an adult sort of nature. The plaintiffs in these two cases want to put up billboards, is that right? Correct. Are there billboards within the city limits of Reno that express political points of view? For example, during campaign season? I would imagine so. I mean, without thinking, I mean. And did those folks have to get a business license in order to put up a billboard saying, vote for or against Donald Trump? No, no. A business license only will apply to the extent that it's a commercial activity. Does the record in this case show us we know there was no application, correct? Correct. And, yes. Does the record in this case show us that the plaintiffs or their representatives were given any indication that if they applied for a license, it would be denied? No. And, again, I think you've kind of hit the point. The problem that we have with the record is the same problem that we're kind of talking about, is that there was no formal application made at any point. I'm talking informal now. Does the record show whether the plaintiffs talked to the business licensing people at all? No, it does not, as far as I recall. There's nothing in the record that shows that. All right. Yeah. And do they allege that any city official told them that if they did apply, it would be denied? Only in regards to the sign code, not in regards to the business license. Correct. Okay. Thank you. Yeah. May I just make sure I understood? Yeah. You're saying that you don't need a business license or any kind of license to put up billboards that relate to political views but only to commercial views? No. What I'm saying is you don't need a business license if you're not engaging in commercial speech. So if it's commercial speech, potentially, yes, you do need a business license. So a billboard would fall under that category. But if it's speech of a noncommercial nature and it's solely for that, that would not require a business license. And? It may require a building permit. It may require a sign permit. But it wouldn't require a business license. You would need a sign permit to put up a billboard supporting Donald Trump in Judge Hawkins' question? You would need a sign permit to put up? I'd have to look at the code right now, Your Honor. I can tell you at the time that this case – well, that's really the issue in this case, is what is required to put up a billboard in the city of Reno? And Mr. Hurson in both – and Brooklyn came in and just asked that question informally of the staff in the Community Development Department. And based upon that informal answer, they went off and they filed three lawsuits, Hurson 1 followed by Hurson 2, this case, and followed by the Brooklyn Patriots case. If you put up – you could put up a billboard saying get rid of ordinances requiring business licenses. That would be a political advertisement? Well, that would be – I mean, well, that would be noncommercial speech. I mean, are we talking about this case or are we talking about since this case? I'm just trying to find out what the rules are. You would not need a business license, but you would need a billboard? Potentially, you would need a sign and a building permit, depending upon what you were constructing. You know, I can't speak to what specifically you would need without having an application in front of me to know what – Well, if the plaintiffs in these two cases had come to the city of Reno and said, we want to put up some billboards, it's not commercial speech. Would they need a business license? They would not need a business license at that point in time, no. And if they said, okay, now we want to get a sign permit and we want to put up our political point of view on these signs, they would need the sign permit? I'm trying to – the difficulty I have is the code at the time that this was being done versus the code today. It's now been changed. Yeah, it's now been changed. So – and that – and without – you know, I'm not completely familiar with what the process would be today, depending upon what came in, is the issue. So, you know, you'd look to the planner first, and the planner would say, well, what's – normally when you do a sign or a billboard or any type of on-prem or off-prem, you come in with a package, and the package will be a sign permit that will basically say, here's what we're proposing to build, and then that would be followed with a building permit, which kind of is all the nuts and bolts. So you have a sign package that is augmenting a building permit package. At some point in that process, an official of the city of Reno would determine whether or not a business license was required. Correct. Correct. And your general response is, if it's non-commercial speech, buy a Honda at XYZ Motors, but it's clearly non-commercial speech, a business license would not be required. If it's non-commercial speech, a business license would not be required. My next question is, did the plaintiffs in this case even do that? Did they even come in with a permit? No. Or did they? Did they come in formally or informally and say, here's what we want to do? To the business license department. We want rent space on existing billboards to display a political statement, and did some city official say, well, you need a business license or you don't need a business license? So what happened and what the record reflects is that on the date of June 8th, Mr. Herson, or on the date of April 28th, 2011, Mr. Herson came in and talked to an associate planner by the name of Jerry Bowen in the planning department and asked whether he could display a permanent sign advocating for the recall of Senator Reid or a similar political message. And then based upon that conversation, approximately 41 days later, he went off and he filed a... What happened in that conversation? What was the answer he was given? He asked if he could put up a billboard to recall Senator Reid, and did anyone say you need a business license? What the record reflects is that, you know, Mr. Bowen didn't particularly remember it, but he probably would have given the response that, you know, he needs to get a sign and a building permit for that. But not a business license. Correct, because at that point in time, he's talking to essentially the building department, not the business licensing division. And they're two separate, they're in the same department, but they're in two separate wings. So the issue becomes, you know, building... Yeah, excuse me. Go ahead. Building looks at building. Business looks at business. When a formal application comes in, then both of those two shall meet. But prior to there being, I mean, because like any city, we get a lot of informal kind of conversations. What is this case about? Is this case about the question of whether they could put up a billboard to recall Senator Reid? Well, this question, I think what this case really is about is about standing at the end of the day. I mean, this case is really about do you have to submit a permit, an application to the city to put up a sign? Well, let me tell you, I thought it was about whether they needed a business license, but I'm getting the impression now that they didn't need a business license for what they were asking about. No, they needed a business license for what they were going to do because it was, if you look in the complaint, it talked about essentially they're going to put up commercial messages over and about. But you've just told us if it's noncommercial speech, you don't need a business license. Right. Here, let me, maybe this will help out. The conversation between. Very nice if it did. Yeah. The conversation between Mr. Bowden and Mr. Herson happened, and this is what purportedly came from that conversation, namely a sign advertising the recall of Senator Harry Reid. The complaint that was filed said basically it was going to be used as a billboard for displaying commercial speech. So that's the problem that we have is we don't have a permit application in front of us that really sits down and says what was going to go on that structure. And all we have at this point where the court, in my mind, has to grapple with it is, you know, essentially kind of a drive-by, you know, query, some discussion, and you never know exactly what was said because it was kind of an informal discussion. It sounds like it is catch-22. Well, it wouldn't be catch-22 if, in fact. I mean, you've. I'm sorry. Were the plaintiffs in these two cases told that they had to have a business license? There's nothing in the record that says that. But they were told, given the nature of the billboard or billboards that they wished to put up, that they'd need a permit. Based, depending upon when that conversation took place, there was two conversations. There was a conversation prior to the filing of the first Herson 1 lawsuit where it was talked about, you know, a permanent sign advocating for the recall of Senator Harry Reid. Following that, there was a complaint that drew it much broader than that, that said the point is we're going to actually be putting up a billboard where we're going to be advertising and, you know, essentially doing off-premises advertising. Then, later on, after that case was dismissed, there was another conversation on August 22, 2011, between Herson and three other city employees that confirmed that applications for new advertising displayed containing off-premises, noncommercial displays, would not be processed by the city because there was a moratorium on at the time. So those are the three conversations, or two conversations and the complaint. Why shouldn't we remand this to district court to determine in the first instance whether what the plaintiffs in these two cases proposed to do is or is not commercial speech? And the second, depending on the answer to that question, whether a business license would be required. Why shouldn't we do that? That's certainly within your power and jurisdiction, Your Honor. One response might be it's already been done. I take it that's not the case. That it's already been done in the sense that the lower court already determined, one, it is or is not commercial speech, and, two, a business license is or is not required. That's not in the record, is it? The lower court did determine that it was commercial speech. That is in the order. And then the second point was that a billboard advocating the recall of commercial speech would help Senator Harry Reid, his commercial speech. That was not in the order because I believe the complaint superseded that conversation. So what was represented in the complaint was different than what was represented in that prior conversation. But what he said in the complaint is he wanted to engage in the business of operating signs displaying speech, right? Yes. What does signs displaying speech mean? And it sounds, in looking at the district judge's opinion, he says Herson never had a license to do business. Correct. I mean, this goes back to what Judge Reinhart was saying. I thought it was about a license to do business, but it isn't? I mean, is that? Well, that goes directly to the standing, right? So if you don't have, it goes to the redressability element of the standing. So we have injury in fact, we have causation, and we have redressability. So the analysis essentially is, you know, even assuming that the sign code is struck down as being unconstitutional, he still is not going to get the remedy he needs because he cannot engage in that speech because he does not have a business license because it is commercial speech and he's required to get a business license. So that is what the court below decided based on the facts at the time. And again, what this really points out — But wait, he can't do what? He can't, he can put up a billboard saying we call Harry Reid. Well, what I believe the judge was saying is that the plaintiff did not have standing because he has not pled his case within the jurisdiction of an Article III court because he needs to have essentially that, at a minimum, apply for the business license, apply for the sign code, have it denied, and now he's got injury in fact, he's got causation, and he's got potentially redressability. But until he has that permit denied, that application denied, he is not — he doesn't have those three elements. He's not injured, there is no causation, and at the end of the day, it's not redressable because — We're talking about the permit, not the business license. It's the same analysis on both sides. So if you were to strike the sign code as being unconstitutional, he still couldn't put up the sign because he doesn't have a business license, and that goes to redressability. If you were to strike the business license, then he still doesn't have the sign code, and that, again, goes to the addressability. So there's — if he would apply for both of those and he was denied, he would have standing, clearly. But you've told us he wouldn't need the business license if it's noncommercial speech. If it's noncommercial speech, correct. And — But we don't know that is the problem. Do you concede that a billboard saying recall or reelect Senator Reid is noncommercial? I don't know. I can't concede that currently. Okay. We've given you a lot of time. Yes. Thank you, Your Honor. Do you have any objection to a remand along the lines I suggested? I think it's necessary. I think the remand could actually be a slightly larger scope. But, yes, I mean, the court and the parties have not fully addressed the business issue, the business license issue. Do you have any objection to going back if it's remanded and applying for whatever licenses are required? So if I could answer that question by way of answering a question that was asked to me during the initial questioning, and that is, is there a case that says a statute of general applicability can be challenged without applying for the permit? I think Kahumanu says that. The case of this court, the wedding planners on the beach challenged the regulations. In Hawaii. In Hawaii. But if it goes back and the district court says, makes a determination that if it's noncommercial speech, a business license is not required, and determines that the speech your clients want to engage in or propose to engage in is noncommercial, and then you're right on the merits of the attack on the permit, right? Yes. Do your clients just want to get the right to put up billboards of a political nature, or do you want to go into the billboard business? We don't, and I believe in the pleadings, we specify commercial and noncommercial speech. What's the commercial aspect? Well, yes, to be able to lease space on faces. I mean, it's not clear that it's always going to be political speech on those faces. So you want to go in the general billboard business? There is a commercial aspect, absolutely. And is that what the dispute is really about? I mean, you want to be able to go into the billboard business in Las Vegas or wherever this is. Reno. Reno. You want to go into the business in Reno of erecting billboards and leasing them to General Motors or Harry Reid or Donald Trump or Brussels, whatever it is, you want to go into that business. And you claim you don't need a business license to go into that business. No. We're saying that the business license as it stands is subject to a facial challenge. Because you, among other business activities, will engage in some noncommercial speech. Engage in noncommercial speech. The business license, whether or not it applies, and you have to apply for it, is to me ambiguous on the record we have here. The code is ambiguous as to what activities a business license is actually required for. Generally speaking, is there a business license issue that could come up in this case? I think it's possible. I think that we haven't had a chance to address it before. I think that we need to get remanded to do that at a minimum and bring a proper challenge to that. There's plenty of case law, including the Baby Tam case that this court decided, that says it's subject to a facial challenge. I think that a permit or no permit, and it's possible the district court may say go get a permit, go apply for a permit, then we'll go from there. One way or another, the challenge to these ordinances proceeds. Well, is the district court correct when he says, Herson desires to erect new permanent billboards on each of the seven parcels in order to generate income from the display of others' speech on portions of the billboards and to display his own noncommercial speech on the remaining portions. Is that accurate? That is accurate. So there is a requirement to have a business license. Provided that the ambiguities in the business license code end up filtering out in such a way that it would apply here, then yes. I mean, you just heard the city attorney tell you, well, if you're making noncommercial speech, you don't need a license. So there's clearly some issues there. And there's clearly some issues on whether or not there's unbridled discretion in that statute. I think that the lower court needs to address it. Let me ask you this practical question. Forget the political speech for a while. Suppose you just wanted to go into the business of erecting billboards and selling them to corporations to advertise their products. Is there any reason that you wouldn't apply for a business license? The only reason would be that we launched a facial challenge and that we've got to deal with it in the courts first. But you do it on the basis of free speech, that you're engaged in ordinary political speech, other free speech. I said put that aside for the moment. And say you just wanted to go into the billboard business and you didn't want to get involved in politics. You said to the Republicans, I don't want those nuts from the Freedom Party. You said to Bernie Sanders, you're a democratic socialist. We don't believe in that. And we just want to be happy, have everybody happy with us, so we're just going to advertise contraceptives. Okay, suppose you decided that. Would you then have any reason not to apply for a business license? The basic answer is no. You wouldn't have a reason not to apply, but I would use the word apply. But you want to challenge it once you apply. Either challenge, but not only are we not, when I say apply, we would either have to address it in some way. Either that's by making the application and then seeing what, in their infinite discretion, what the city wants to do about it, or by going into court and saying, look, we need an order that says you can't enforce this lack of a business license against us in this situation because it's an unconstitutional restraint on speech, among other things. And that's the case whether it's commercial or non-commercial speech. So your position is that anything regulating billboards entitles you to make a facial challenge? If we're talking about commercial speech only and it doesn't pass central Hudson, certainly. Couldn't say that again. And it doesn't pass the central Hudson test for commercial speech only, as altered by Reed, certainly. Any ordinance that's subject to a facial challenge is subject to a facial challenge.  Thank you. Thank you, Your Honors. Case just argued and submitted.
judges: Molloy, Reinhardt, Hawkins